UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                     CRIMINAL NO: 06-175 (MJD/JSM)

   Plaintiff,

v.                                             REPORT AND RECOMMEDNATION

DESMOND ANDRE LAMBERSON

   Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Desmond Andre Lamberson's Motion to Suppress Evidence [Docket No. 13]. Assistant United States Attorney General Andrew Winter appeared on behalf of the Government. Michael C. Davis, Esq. appeared on behalf of defendant Desmond Andre Lamberson, who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings, the pre-hearing submissions, post-hearing submissions, exhibits submitted at the hearing, and testimony taken from Detective Denis Otterness it is recommended that: Desmond Andre Lamberson's Motion to Suppress Evidence [Docket No. 13] be **DENIED**.

**FACTUAL BACKGROUND**

Detective Denis Otterness, with the City of Bloomington Police Department and a DEA Drug Task Force, testified that he was involved in the investigation of defendant Desmond Andre Lamberson's alleged narcotic activities. Detective Otterness received information from a confidential informant ("CI") that Lamberson was engaged in drug trafficking activities in December of 2005. The CI also stated that Lamberson kept

semi-automatic pistols in his apartment. Detective Otterness then testified that the CI cooperated with police and made a series of controlled buys of crack cocaine from Lamberson at a residence located on Cedar Avenue in Minneapolis, Minnesota, on April and May of 2006. There was no mention by the CI that Lamberson was in possession of firearms during the three controlled buys that occurred in April and May.

Detective Otterness applied for a search warrant for Lamberson's residence. The basis for the search warrant included the following:

- In December 2005, Detective Otterness received a tip from a CI that Lamberson was involved in trafficking large amounts of crack cocaine in the Minneapolis metropolitan area and that the CI had recently purchased quantities of crack cocaine from Lamberson. The CI also indicated that he had recently seen Lamberson in possession of a Glock and a Ruger semi-automatic handgun that Lamberson kept inside his apartment.

- The CI provided the address for Lamberson's apartment, his phone numbers, and the type of vehicle Lamberson drove.

- Detective Otterness and the CI drove by Lamberson's apartment and observed a vehicle matching the description provided by the CI parked in the rear of the apartment building.

- Detective Otterness contacted the Minneapolis Police Department and asked if officers had any contacts with individuals driving the vehicle identified by the CI. A Minneapolis police officer stated that the Police Department had contacts with a male named Desmond Andre Lamberson. The CI also positively identified Lamberson in a photo line-up.

- The CI conducted two controlled buys from Lamberson at his apartment. The narcotics purchased from Lamberson field-tested positive for crack cocaine.

- The CI conducted another controlled buy from Lamberson in his apartment just 72-hours prior to Detective Otterness' application for the search warrant. The 13.98 grams of narcotics purchased from Lamberson field-tested positive for crack cocaine.

- During all of the controlled buys, police overheard the CI making contact with Lamberson via an audio transmitter.

2

- A criminal history check of Lamberson showed that he had prior arrests and a prior felony conviction for narcotics violations, thereby prohibiting Lamberson from owning or possessing a firearm.

See Government Ex. 1.

In addition, the search warrant application asked for permission to conduct an unannounced entry based on the following facts:

> A criminal history check conducted on subject Lamberson indicates he has prior arrests and a prior felony conviction for narcotics related violations.  Lamberson also has a previous arrest for second degree assault.  Your Affiant has received information from the Metro Gang Strike Force that Lamberson is a documented/confirmed active member of the Gangster Disciple (GD) street gang.
>
> Based on information obtained from a Cooperating Defendant (CD) Lamberson has recently been in possession of 2 semiautomatic handguns.  The previously mentioned felony conviction prohibits Lamberson from owning/possessing a firearm.
>
> Your Affiant knows from previous investigations that individuals dealing in controlled substances maintain methods to destroy evidence in a rapid and expedient manner and that they often maintain weapons for their protection.  Lamberson has shown a past tendency to commit crimes of violence based on his previously mentioned arrest.  Your Affiant requests an unannounced entry to eliminate the possibility of any evidence being destroyed and to maintain an element of surprise to preserve officer safety.  Also your Affiant requests an unannounced entry because the address being searched is a multi-unit apartment building with common walls, which are shared with neighboring residents.  An unannounced search will also create a safer environment for neighboring residents.

Id.

Detective Otterness testified that the general purpose of a "no-knock" provision in a search warrant is to prevent suspects from fleeing a residence, from arming themselves, or from disposing of contraband.  According to Detective Otterness, officer

3

safety was the basis for the "no-knock" request, with regards to Lamberson's residence. In particular, Detective Otterness pointed to previous drug convictions for Lamberson; a 1999 second degree assault charge; the CI's December 2005 statement that Lamberson had been in possession of semi-automatic pistols in his apartment; and that Lamberson was in a Minnesota database of active gang members. Detective Otterness stated that an individual is included on the list of active gang members if they meet three points out of a ten-point criteria, including: admitting to actively being involved in a gang; being in the presence of known gang members; tattoos; and wearing clothing associated with gangs.  Detective Otterness could not testify which of the criteria Lamberson met. Detective Otterness further testified that being listed as an active gang member is relevant to officer safety since gang members tend to be armed, involved with narcotics, and also commit violent crimes.  In sum, Detective Otterness stated that there was reason to believe that the officers' safety would be jeopardized in executing the search warrant for Lamberson's residence.

Hennepin County District Judge Patricia L. Belois signed the search warrant on May 15, 2006.  Since there were no state officers available to conduct the search of Lamberson's residence, Detective Otterness called on a number of federal officers in the DEA drug task force to assist him with the execution of the search warrant. Detective Otterness testified that he needed to get clearance from the DEA before the federal officers could be used in the execution of the search warrant.

The search warrant of Lamberson's residence was executed on May 16, 2006. Law enforcement officers found Lamberson present and also discovered a loaded .45 Desert Eagle semi-automatic handgun, approximately 93 grams of crack cocaine,

4

$8,000 in currency, a digital scale, mail in Lamberson's name, and a loaded magazine clip for a .45 caliber handgun.

Lamberson has brought a motion to suppress the evidence seized as result of the search warrant permitting officers to avoid the knock and announce requirement set forth by 18 U.S.C. § 3109.  Lamberson asserted that the exigent circumstances needed to support an unannounced search under § 3109 were absent in this case, thereby invalidating the unannounced entry and search of the residence done pursuant to a search warrant.[1]  In opposition, the Government argued that the evidence present in this case justified a "no-knock provision" in the search warrant.  The Government also contended that even if the "no-knock requirement was violated, the good faith exception under United States v. Leon, 468 U.S. 897 (1984) applies to the officers' actions.  Finally, the Government asserted that under the Supreme Court's recent ruling in Hudson v. Michigan, 126 S.Ct. 2159 (2006), evidence discovered following knock and announce violations should not be excluded.

## ANALYSIS

**I.   VALIDITY OF NO-KNOCK ENTRY**

It is Lamberson's contention that Detective Otterness alleged insufficient facts in his application for a search warrant and supporting affidavit to justify an unannounced search warrant to preserve evidence or for reasons of officer safety.

As preliminary matter, this Court notes that whether it analyzes the propriety of the no-knock entry into Lamberson's residence under the federal "no-knock statute," 18

---

[1] Lamberson argued that § 3109 applies to this case, as all of the officers who executed the search, save for Detective Otterness, were federal agents.  Section 3109 applies when a "federal officers are a significant part of the a search conducted pursuant to a state warrant . . ."  See United States v. Tavares, 223 F.3d 911, 914 (8th Cir. 2000) (citation omitted).  The Government has not contested Lamberson's assertion that § 3109 is applicable to this case.

5

U.S.C. § 3109[2] or the Fourth Amendment, it reaches the same conclusion. This is because "[b]oth section 3109 and the Fourth Amendment codified the same common-law knock-and-announce principle, and [ ] both are subject to the same exceptions." United States v. Scroggins, 361 F.3d 1075, 1080 (8th Cir. 2004) (citing United States v. Ramirez, 523 U.S. 65, 72-73 (1998); United States v. Banks, 540 U.S. 31 (2003)). In other words, § 3109 does not entitle a defendant to any greater protections than those of the Fourth Amendment. Id. (citation omitted). As such, this Court will proceed with its determination of whether the unannounced entry into Lamberson's residence violated the protections afforded by the Fourth Amendment.

The Fourth Amendment incorporates "the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." Richards v. Wisconsin, 520 U.S. 385, 387 (1997) (citing Wilson v. Arkansas, 514 U.S. 927 (1995)). However, an unannounced entry is justified "'under circumstances presenting a threat of physical violence,' or 'where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.'" Id. at 391 (quoting Wilson, 514 U.S. at 936). Judges may issue no-knock warrants when sufficient cause to do so can be shown ahead of time. See Scroggins, 361 F.3d at 1082 (citing Richards, 520 U.S. at 396 n. 7).

A law enforcement officer seeking to obtain a no-knock warrant must demonstrate a "reasonable suspicion" that knocking and announcing, under the

---

[2] 18 U.S.C. § 3109 provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

6

particular circumstances of that search, would threaten officer safety, be futile, or inhibit the investigation of the crime.[3] Id. at 1082 (citations omitted). "However, the showing needed to justify a no-knock entry is not high." United States v. Weeks, 160 F.3d 1210, 1213 (8th Cir. 1998) (citation omitted). When making reasonable-suspicion determinations, a court must look at the "totality of the circumstances" of each case to see whether a law enforcement officer had a "particularized and objective basis" for their conclusions. See Scroggins, 361 F.3d at 1081 (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." Arvizu, 534 U.S. at 273. The reasonable suspicion standard is lower than the probable cause standard. Scroggins, 361 F. 3d at 1081.

Detective Otterness testified that the main reason for requesting the no-knock warrant was because of concerns for officer safety.[4] The basis for this concern was Lamberson's criminal history, his inclusion as an active gang member on a Minnesota database, and the CI's report that Lamberson had handguns in his apartment. Lamberson argued that this evidence does not support the issuance of a no-knock warrant. In particular, it is Lamberson's contention that the only support Detective Otterness for the May 2006 no-knock warrant was the CI's statement in December of 2005 that plaintiff was in possession of two handguns, some arrests with no prosecution, and the fact that Lamberson was listed on a state database as an active

---

[3] Minnesota courts also recognized that "no-knock" warrant can be issued where law enforcement officers have a reasonable suspicion under the given circumstances that knocking and announcing their presence would be dangerous. See State v. Wasson, 615 N.W.2d 316, 320 (Minn. 2000) (citing Richards, 520 U.S. at 394).

[4] While Detective Otterness testified that general reasons for an unannounced entry include destruction of evidence, and included this reason as a basis to the district judge for the "no-knock" warrant, the focus of his testimony was on officer safety.

gang member. See Defendant's Memorandum in Support of Motion to Suppress Evidence ("Def.'s Mem.") at pp. 6-7.

Lamberson's criminal history included: (1) an undated narcotics conviction; (2) a 1999 second-degree assault charge; and (3) a charge for possession of crack cocaine. A criminal history reflecting violent tendencies is sufficient to provide law enforcement officers with the needed justification to forego the knock and announce requirement. See United States v. Hellbusch, No. 94-2356, 1995 WL 94714 at *1 (8th Cir. Mar. 9, 1995) (finding given that guns are tools of the drug trade, the presence of drugs at a residence and past charges of violent criminal history, even if the defendant was not convicted of those charges, were sufficient to support the issuance of a no-knock warrant); see also United States v. Basham, 268 F.3d 1199, 1205 (10th Cir. 2001) (finding that the defendant's actual criminal history, including being charged with assault and two weapons violations, was relevant support to the determination that reasonable suspicion existed to believe that knocking and announcing would be dangerous); Weeks, 160 F.3d at 1214 (citing United States v. Bates, 84 F.3d 790, 795 (6th Cir. 1998) ("'criminal record reflecting violent tendencies, or verified reputation of a suspect's violent nature can be enough to law enforcement officers with justification to forego the necessity of knocking and announcing their presence'")).

In addition, Lamberson had sold crack cocaine to the CI on at least three different occasions from his residence, including the sale within 72 hours of Detective Otterness' request for the warrant. Further, Detective Otterness knew from his experience as a law enforcement officer that individuals dealing drugs often kept weapons for their protection. See Lyons v. Robinson, 783 F.2d 737, 739 (8th Cir. 1995) (per curium) (recognizing that firearms are tools of the drug trade). Detective Otterness

also had information from the CI that Lamberson had a history of keeping handguns in his apartment. Finally, Detective Otterness was aware that Lamberson was listed as an active gang member by a state database. See generally, United States v. King, 222 F.3d 1280, 1285 (10th Cir. 2000) (holding that no-knock entry was justified where police demonstrated, among other things, that defendant and his associate were "gang members known to carry firearms"). Based on the totality of these facts and circumstances, the Court concludes that Detective Otterness had sufficient reasonable suspicion to believe that knocking and announcing would threaten officer safety. On this basis, Lamberson's motion to suppress evidence should be denied.

**II.    LEON EXCEPTION**

Even if this Court had determined that the search warrant at issue lacked the necessary reasonable suspicion required for the issuance a no-knock warrant, the evidence obtained pursuant to the search warrant is still admissible based on the good faith exception established in United States v. Leon, 468 U.S. 897 (1984). The Leon exception also applies to the issue of no-knock warrants. See e.g., Scroggins, 361 F.3d at 1083-84; Tavares, 223 F.3d at 917.

In Leon, the court stated that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" Leon, 468 U.S. at 922 (citations omitted). However, the Leon Court noted that there are certain instances when "the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence." United States v. Martin, 833 F.2d 752, 755 (8th Cir. 1987); Leon, 468 U.S. at 922-23. "When a police officer acts in an objectively reasonable manner in reliance on

a subsequently invalidated search warrant, there is no rational reason for suppressing the fruits of the search." Martin, 833 F.2d at 755. The Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 923 n.23.

The Leon Court found four instances when suppression remained appropriate. First, suppression is appropriate "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Leon, 468 U.S. at 923. Second, suppression is appropriate "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant." Id. Third, the court found that an officer would not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Id. (quoting Brown v. Illinois, 422 U.S. 590, at 610-611, (Powell, J., concurring in part). Finally, the court found that "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Id.; see also, United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001) (discussing four situations identified in Leon in which an officer's reliance on a warrant would be unreasonable); United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990) (same).

No evidence was presented to this Court to suggest that any of the instances precluding the application of the Leon good faith exception, applied to the reliance by Detective Otterness and DEA agents on the no-knock warrant issued by a Hennepin County District Judge. Therefore, even if the search warrant issued by the issuing court was found to lack the required reasonable suspicion to support a request for a no-knock entry, the good-faith reliance of the officers who executed the warrant, validated the no-knock search.

### III.  THE EFFECT OF HUDSON v. MICHIGAN

The Government argued that even if this Court concluded that the unannounced entry in this case was violation of either the Fourth Amendment or 18 U.S.C. § 3109, the recent decision by the United States Supreme Court in Hudson v. Michigan, 126 S.Ct. 2159 (2006) would preclude exclusion of the evidence seized from Lamberson's apartment. See Govt's Mem. at pp. 8-9. In Hudson, the issue before the Supreme Court was "whether violation of the 'knock-and-announce' rule requires the suppression of all evidence found in the search." Id. at 2162. The defendant in Hudson had moved to suppress all of the inculpatory evidence discovered during an unannounced entry by law enforcement into his house, arguing that the premature entry violated his Fourth Amendment rights. Id. The Supreme Court concluded that the knock-and-announce principle protects against the loss of human life and limb, the unwarranted destruction of property, and invasion of the occupants' privacy and dignity. Id. at 2165. "What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests that were violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." Id. The Supreme Court thereby

11

concluded that "[r]esort[ing] to the massive remedy of suppressing evidence of guilt is unjustified." Id. at 2168.

Lamberson argued that Hudson is inapplicable to this case because the suppression remedy under the Fourth Amendment and that created by courts through 18 U.S.C. § 3109 are distinct from each other. See Def.'s Mem. at p. 6. However, the Eighth Circuit has specifically found that § 3109 "does not entitle a defendant to greater protections than does the Fourth Amendment." Scroggins, 361 F.3d at 1080. Consequently, even if this Court had found that the unannounced entry of Lamberson's apartment was improper, this Court would not recommend suppression of the evidence seized from his apartment given Hudson and the Eighth Circuit's decision in Scroggins tying the protections under § 3109 to those afforded by the Fourth Amendment.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein,

**IT IS RECOMMENDED THAT:**

Defendant Desmond Andre Lamberson's Motion to Suppress Evidence [Docket No. 13] be **DENIED**.

Dated:       August 9, 2006

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

12

Pursuant to Local Rule 72.1(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 21, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 21, 2006**.